

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESMERALDA SARAI CRUZ-VENEGAS,<br><br>　　　　　Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | Case No.: 3:18-cv-02511-BEN<br>　　　　　3:17-cr-03179-BEN-1<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**<br><br>**[ECF No. 1]** |

## I.　INTRODUCTION

Before the Court is Petitioner Esmeralda Sarai Cruz-Venegas' ("Movant" or "Petitioner") motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence of 48 months' imprisonment and five years of supervised release, resulting from her felony conviction for Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. CV ECF No.[1] 1; ECF No. 28. After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Petitioner's Motion.

---

[1] All docket citations refer to the criminal case docket, Case No. 3:17-cr-00414-BEN-1. Any docket citations in this civil case will be referred to as "CV ECF No."

-1-

3:18-cv-02511-BEN; 3:17-cr-03179-BEN-1

## II. BACKGROUND

### A. Statement of Facts

In Spring 2017, Petitioner was a nineteen year old student at the University of Baja California, majoring in Political Science, and became pregnant with her second child. ECF No. 21 at 2:16-18. However, on August 26, 2017, Petitioner was hospitalized for two days following a miscarriage. *Id.* at 2; ECF No. 18 at 7. After Petitioner confided in her father regarding the medical bills she had incurred, he agreed to loan her the money for her hospital bills because her boyfriend refused to help with expenses. ECF No. 21 at 2:19-24; ECF No. 18 at 4.

Meanwhile, at an unknown time, Petitioner admitted to responding to a Facebook ad that sought females to work in the United States for very good pay. ECF No. 18 at 3. The reply to her message informed her that she would have to transport drugs into the United States in exchange for $800.00, which she would receive after she completed the delivery. *Id.* Petitioner agreed to the terms. *Id.*; *see also* ECF No. 21 at 2:25-27. Petitioner stated she hoped to be able to pay her father back for the money for her medical expenses after earning money by transporting drugs. ECF No. 18 at 4.

On September 7, 2017, Petitioner received a call from an unknown female, who told Petitioner to take a taxi to and meet her at a location, which was an empty lot. ECF No. 18 at 3. Upon arrival, both women drove to a residence near the port of entry, where a man placed narcotics on Petitioner. *Id.* Then, the two females took a taxi from the residence to the border crossing, where Petitioner was instructed to erase all conversations about the smuggling from her phone. *Id.* Next, Petitioner applied for entry into the United States from Mexico via the Calexico, California, Port of Entry pedestrian lanes. *Id.* At 7:28 a.m., Petitioner presented her Border Crossing Card and said she was going shopping. *Id.* As Petitioner was waiting for her purse at the x-ray machine, a U.S. Customs and Border Protection ("CBP") officer observed a bulge in her groin and buttocks area, so Petitioner was referred to a secondary inspection for a pat-down. ECF No. 18 at 3; ECF No. 21 at 3:4-8. During the pat down, the CBP officer discovered three

packages in her breast area and seven in her groin and buttocks area. ECF No. 18 at 3. A total of 10 packages of methamphetamine were recovered from Petitioner with a net weight of approximately 1.92 kilograms. *Id.*

Petitioner's border crossing history indicates 41 previous border crossings. ECF No. 18 at 3. Authorities also seized $170 and three cell phones from Petitioner at the time of her arrest. *Id.* However, Petitioner stated to authorities that she crossed so many times because "friends without papers would ask [her] . . . to get them things in Calexico and bring them back [to Mexico]." *Id.* at 4. Petitioner claims that she did not know what type of drugs she was transporting because they were all wrapped up when they were strapped onto her body. *Id.*

The Presentence Investigation Report indicates that Petitioner saw a counselor in Mexicali in 2012 for six months to address feelings of anger and depression. ECF No. 18 at 7. Petitioner also has a young son, who resides with her parents while she is incarcerated. *Id.*

Petitioner is currently twenty-two years old and is scheduled to be released on February 2, 2021.

### B. **Procedural History**

On September 8, 2017, the Government filed a complaint against Petitioner for violation of 21 U.S.C. §§ 952 and 960. ECF No. 1. On September 12, 2017, Petitioner waived a preliminary hearing. ECF No. 7.

On October 5, 2017, the Government charged Petitioner with knowingly and intentionally importing 1.92 kilograms (4.22 pounds) of a mixture and substance containing a detectable amount of methamphetamine, into the United States in violation of 21 U.S.C. §§ 952 and 960. ECF No. 10. That same day, October 5, 2017, Petitioner waived her right to prosecution by indictment and consented to prosecution by information. ECF No. 11.

On November 7, 2017, Petitioner consented to entering a Rule 11 plea before Magistrate Judge Nita L. Stormes. ECF No. 15. That same day, November 7, 2017,

Petitioner waived indictment and entered a guilty plea. ECF No. 16. In her plea agreement, signed by Petitioner on October 25, 2017, Petitioner represented that she "has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea." ECF No. 16 at 6. Petitioner also agreed that she waived "all rights to appeal and to collaterally attack every aspect of the conviction and sentence." *Id.* at 11. However, the plea agreement contained exceptions, which allowed her to appeal (1) "a custodial sentence above the greater of 71 months or the mandatory minimum term, if applicable" or (2) "the conviction or sentence on the basis that defendant received ineffective assistance of counsel." *Id.* at 11. That same day, November 7, 2017, Petitioner entered her guilty plea before Judge Stormes, and Judge Stormes issued a findings and recommendation to accept Petitioner's guilty plea. ECF No. 17.

On January 2, 2018, a Presentencing Investigation Report was filed. ECF No. 18. The following day, on January 3, 2018, after no objections were filed, the Court accepted the Findings and Recommendation of the Magistrate Judge and accepted Petitioner's guilty plea. ECF No. 19.

As part of Petitioner's plea agreement, the parties agreed to jointly recommend Petitioner's sentencing be based on the following U.S. Sentencing Guidelines Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

| | | |
|---|---|---|
| 1. | Base Offense Level [USSG § 2D1.1(c)(4)] | 34 |
| 2. | Importation of Methamphetamine [USSG § 2D1.1(b)(5)] | +2 |
| 3. | Safety Valve, if applicable [USSG §§ 2D1.1(b)(17) & and 5C1.2 | -2 |
| 4. | Acceptance of Responsibility [USSG § 3E1.1(a)] | -2 |
| 5. | Acceptance of Responsibility [USSG § 3E1.1(b)] | -1 |
| 6. | Departure for Fast Track [USSG §5K3.1] | -4 |

ECF No. 16 at 8. The government agreed to recommend that the defendant be sentenced "to the low end of the advisory guideline range recommended by the Government or the statutory mandatory minimum sentence, pursuant to this agreement, whichever is greater." *Id.* at 10:8-12.

On March 26, 2018, the Court sentenced Petitioner to 48 months in prison. ECF No. 27; CV ECF No. 1 at 1. On April 27, 2018, the Court entered judgment accordingly. ECF No. 27; CV ECF No. 1 at 1.

Petitioner did not appeal. ECF No. 1 at 1.

On November 1, 2018, Petitioner filed this Motion, seeking to reduce her sentence on the grounds of (1) harsh sentencing; (2) ineffective assistance of counsel; and (3) poor mental health. ECF No. 28 at 4-11; *see also* CV ECF No. 1 at 4-11.

### III. <u>LEGAL STANDARD</u>

"A motion to attack a prison sentence made under section 2255 is a federal prisoner's substitute for a petition for a writ of habeas corpus." Josephine R. Potuto, *The Federal Prisoner Collateral Attack: Requiescat in Pace*, 1988 B.Y.U. L. Rev. 37, 37 (1988). Under section 2255, a movant is entitled to relief if the sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was in excess of the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005).

If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (providing that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"). Courts may deny a hearing where "the petitioner's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1158-59 (9th Cir. 1996) (rejecting the appellant's contention that the district court erred by denying the appellant an evidentiary hearing on his ineffective assistance of counsel claim because the appellant failed to allege specific facts entitling him to relief) (internal quotations and citations

omitted). The right to a hearing is earned by alleging "specific facts which, if true, would entitle him [or her] to relief." *Id.*

The Ninth Circuit has "consistently held that a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding." *See, e.g., McMullen*, 98 F.3d at 1157 (holding that the because the appellant "failed to raise any objection regarding the type of methamphetamine, either at sentencing or on direct appeal, he is barred from raising this issue in a § 2255 motion," and "the district court properly denied his motion to vacate his sentence on this ground."). Thus, "Petitioners waive the right to object in collateral proceedings unless they make a proper objection before the district court or in a direct appeal from the sentencing decision." *Id.*

## IV. DISCUSSION

Petitioner argues that her plea should be vacated under 28 U.S.C. § 2255 ("Section 2255") because she (1) feels strongly that for a first time offender, her sentence was overly harsh for the crime committed, ECF No. 28 at 5, (2) received ineffective assistance of counsel because her attorney did not request a mental evaluation for her, and she suffers from anxiety and depression, *id.* at 5, and (3) suffers from poor mental health, *id.* at 6. Petitioner's Motion is **DENIED**. As an initial matter, harsh sentencing or poor mental health are not grounds upon which a defendant may seek to vacate, reduce, or correct a sentence. Further, the Court has no authority to reconsider or modify its sentence at this point. *See, e.g.*, 18 U.S.C. § 3582(c) (providing that "[t]he court may not modify a term of imprisonment once it has been imposed); see also Fed. R. Crim. P. 35(b) (providing that the court can only reduce sentence "[u]pon the government's motion"); Fed. R. Crim. P. 55(b)(2) (providing that "[t]he court may not extend the time to take any action under Rule 35, except as stated in that rule"); *Dolan v. United States*, 560 U.S. 605, 623 (2010) (Roberts, J., dissenting) (noting that "an error [in a sentencing] may be corrected by the trial court only if it is 'clear,' and only within 14 days after the sentence is announced"); *United States v. Gomez*, No. 17CR2520-LAB-1, 2019 WL 1301756, at *1 (S.D. Cal. Mar. 21, 2019) (denying, without a hearing, the petitioner's motion to vacate, set aside, or

correct her 71 month prison sentence based on claims of (1) overly harsh sentencing, (2) failure to receive the benefit of her minor role at sentencing, (3) denial of a mental evaluation, and (4) ineffective assistance of counsel). As such, the only viable grounds for Petitioner's Motion is the grounds asserting ineffective assistance of counsel. As analyzed below, however, although this claim is timely, it is procedurally barred. Further, even if the claim were not procedurally barred, "petitioner's allegations, viewed against the record, fail to state a claim for relief" and warrant "summary dismissal." *See McMullen*, 98 F.3d at 1158-59.

### A. Petitioner's Motion Is Not Time Barred

A motion to vacate must be filed within one year from the date the conviction becomes final. 28 U.S.C. § 2255(f) (providing that "[a] 1-year period of limitation shall apply to a motion under this section," which will run from, *inter alia*, the date on which "the judgment of conviction becomes final"). A conviction becomes final once the deadline for filing the notice of appeal has expired. *United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015) (noting that the sentence "became a final judgment for habeas purposes once the deadline for filing the notice of appeal expired 14 days later"); *see also* FED. R. APP. P. 4(b)(1)(A) (providing that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of . . . the entry of judgment").

Here, Petitioner's conviction became final on May 11, 2018, or fourteen (14) days after entry of the judgment on April 27, 2018[2]. CV ECF No. 1 at 1. Thus, May 11, 2018, or fourteen (14) days after the judgment became final, was Petitioner's deadline to file her Notice of Appeal. FED. R. APP. P. 4(b)(1)(A). Petitioner did not file a notice of appeal. CV ECF No. 1 at 1. Accordingly, the statute of limitations period for Petitioner to file a

---

[2]  Although the judgment is signed by the judge on March 26, 2018, and the docket in this case reflects that the Court entered judgment on April 4, 2018, Petitioner indicated in her Motion that the date of judgment was April 27, 2018. CV ECF No. 1 at 1. In an effort to give Petitioner every benefit of the doubt when ruling on this Motion, the Court utilizes the later of these dates, or April 27, 2018.

motion to vacate under 28 U.S.C. § 2255 ended May 11, 2019.

On November 1, 2018, Movant filed the instant Motion to Reduce her Sentence. ECF No. 28 at 1; *see also* CV ECF No. 1 at 1. As a result, because she filed before the May 11, 2019 deadline, her Motion is not time-barred. However, Petitioner's failure to appeal raises a related issue of whether her Motion is barred by procedural default.

### B. Petitioner's Motion Is Barred Due to Procedural Default

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' or that [2] he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Sanchez-Llamas*, 548 U.S. at 350-51 (same); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (holding that "[a] § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default"). Here, Petitioner's Motion makes no claims of actual innocence, which would contradict the record in this case, including her guilty plea. *See* CV ECF No. 1. As such, Petitioner must make a showing of cause and actual prejudice to overcome her procedural default.

"Constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default." *Ratigan*, 351 F.3d at 964–65; *see also* Potuto, B.Y.U. L. Rev. 37 (providing that "[t]he Supreme Court so far has recognized only two claims for cause sufficient to permit collateral review despite a default: (1) ineffective assistance of counsel, and (2) an objective factor 'external to the defense' that produced the default"). Thus, in order to excuse her procedural default, a petitioner "must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Ratigan*, 351 F.3d at 964–65 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In *Ratigan*, the petitioner argued his counsel's performance was deficient

because he failed to object to certain issues, namely, the insufficiency of proof offered by the government. *Id.* at 964-65. Nonetheless, the Court did not find this potential failing on the defense counsel's part to warrant overcoming the procedural default: "His counsel's failure to recognize every possible legal argument, including the arguably insufficient proof offered by the government as to one element of the crime, does not, however, constitute cause." *Ratigan*, 351 F.3d at 965. Rather, "[t]he mere fact that counsel failed to recognize the factual or legal basis for the claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* (quoting *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir.2003)). Thus, the *Ratigan* court concluded that the alleged errors were not so serious as to deprive the appellant of a fair trial, and as a result, the ineffective assistance claim was not supported by the record. *Ratigan*, 351 F.3d at 965. Accordingly, the appellant "failed to show that he should be excused from his procedural default." *Id.* Similarly, in *United States v. McMullen*, the Ninth Circuit held that the because the appellant "failed to raise any objection regarding the type of methamphetamine, either at sentencing or on direct appeal, he [was] . . . barred from raising this issue in a § 2255 motion." 98 F.3d at 1157. As a result, the Ninth Circuit held that "the district court properly denied his motion to vacate his sentence on this ground." *Id.*

Here, just like the petitioners in *Ratigan* and *McMullen*, who also tried to raise ineffective assistance of counsel claims through a Section 2255 motion without having raised the claim on direct appeal first, Petitioner did not file a notice of appeal. CV ECF No. 1 at 1. Thus, this Court must deny Petitioner's Motion, like the motions in *Ratigan* and *McMullen*, unless she can show cause or prejudice. However, for the reasons outlined below, the Court finds Petitioner has made no such showing because her claims of ineffective assistance fail. More importantly, her claims of ineffective assistance do not relate to the negotiation of the plea agreement. *See, e.g. Washington v. Lampert*, 422 F.3d 864, 870 (9th Cir. 2005) (holding that "in the context of § 2255 challenges brought by federal prisoners, that waivers cannot bar IAC claims associated with the negotiation of plea agreements"). As a result, her claims have fallen victim to the bar of procedural

-9-

default. Further, as analyzed below, Petitioner, fails to establish ineffective assistance of counsel.

### C. Petitioner Waived Her Claims Related to Overly Harsh Sentencing and Mental Health

To the extent Petitioner attempts to collaterally attack her conviction or sentence, she waived her right to do so. *See United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (waiver of a right to appeal does not violate due process); *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) ("[P]lea agreements are contractual in nature and are measured by contract law standards") (internal quotations omitted).

In this case, in Petitioner's plea agreement, Petitioner agreed that she waived "all rights to appeal and to collaterally attack every aspect of the conviction and sentence." ECF No. 16 at 11. However, the plea agreement contained exceptions, which allowed her to appeal (1) "a custodial sentence above the greater of 71 months or the mandatory minimum term, if applicable" or (2) "the conviction or sentence on the basis that defendant received ineffective assistance of counsel." *Id.* Therefore, Petitioner's claims arising out of (1) a general view that her sentence was overly harsh[3] and (2) poor mental health were

---

[3] To the extent that Petitioner argues her sentence was overly harsh, the Court notes that Petitioner was charged with violation 21 U.S.C. §§ 952 and 960. Section 960 provides that where "[a]ny person who . . . knowingly or intentionally imports or exports a controlled substance . . . . 50 grams or more of methamphetamine," that "person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life." 21 U.S.C. § 960(a)-(b). Thus, the mandatory minimum term of imprisonment for Petitioner's crimes was 10 years. *Id.* The Federal Sentencing Guidelines Manual, however, provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S. SENT'G GUIDELINES MANUAL § 5G1.1(b), (c)(2). Thus, even though under the Sentencing Guidelines, Petitioner's total offense level of 31 and Criminal History Category I indicated a guideline imprisonment of 108 months to 135 months, because the statutory minimum was greater than the guideline, the Court was required to impose the statutory minimum of 10 years or 120 months. Yet, Petitioner received a sentence of 4 years. As such, the Court finds that even for a first-time offender, Petitioner's argument that her sentence is overly harsh does not hold water.

waived pursuant to the waiver of right to collaterally attack her sentence in the plea agreement. Nonetheless, a claim of ineffective assistance of counsel was preserved for collateral attack.

### D. Petitioner Has Failed to Present Evidence of Ineffective Assistance of Counsel

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). That "right to counsel is the right to effective assistance of counsel," *Missouri*, 566 at 138 (citing *Strickland*, 466 U.S. at 686), and applies to all critical stages of criminal proceedings, including "the consideration of plea offers." *Missouri*, 566 U.S. at 138.

The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *see also Missouri*, 566 U.S. at 138 (same). Under this test, "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill*, 474 U.S. at 56–57); *see also Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (providing that "after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief"; rather, "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity"). Thus, in a claim of ineffective assistance of counsel arising out of a defendant's guilty plea, the defendant must meet the *Strickland* test by showing that (1) under an objective standard, "counsel's assistance was not within the range of competence demanded of counsel in criminal cases" and (2) the defendant suffered actual prejudice because of this incompetence. *Lambert*, 393 F.3d at 979–80; *Lockhart*, 474 U.S. at 57–58. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the

-11-

result unreliable." *Strickland*, 466 U.S. at 687.

With respect to the first factor, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. This involves proving "that counsel's performance was deficient," by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Iaea v. Sunnn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland*). Only where counsel makes such serious errors that he or she is "not functioning as the counsel guaranteed by the Sixth Amendment" will a court find deficient performance. *Iaea*, 800 F.2d at 864. Accordingly, courts review claims of ineffective assistance of counsel under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Staten v. Davis*, 962 F.3d 487, 495 (9th Cir. 2020); *see also Strickland*, 466 U.S. at 689 (providing that "[j]udicial scrutiny of counsel's performance must be highly deferential"). The Court should not view counsel's actions through "the distorting lens of hindsight." *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989)), *vacated on other grounds by Angelone v. Deutscher*, 500 U.S. 901 (1991).

As to the second factor, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58–59. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691-92. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Then, the court must evaluate "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

While the Court would normally analyze a claim of ineffective assistance of counsel under the two-pronged test set forth by the *Strickland* court, Petitioner made no specific claims of (1) deficient performance or (2) prejudice. Instead, Petitioner claims that (1) her attorney did not request a mental evaluation for her, and she suffers from anxiety and severe depression, which she is being treated for in prison, (2) her attorney did not explain her case to her so she could understand what was happening, and (3) she was told to sign a plea agreement so she would not get more than ten years. ECF No. 1 at 5. The Court analyzes why each of these claims, when viewed in light of the record, fails to support a claim for ineffective assistance of counsel.

First, Petitioner claims that her attorney did not explain her case to her so she could understand what was happening. CV ECF No. 1 at 6. Despite these statements, even assuming that her attorney had not explained what was happening to Petitioner, she fails to allege that she did not understand what was happening in her case. To the contrary, the record indicates she understood what was happening. At the sentencing hearing, both Petitioner and her attorney agreed that she had waived her right to appeal and collaterally attack the judgment. ECF No. 26. Further, while at the sentencing hearing, Petitioner herself stated, "And I want to thank my attorney for everything he has done on my behalf." *Id.* Thus, the record indicates that she was satisfied with her representation. Even still, case law in similar circumstances has found general claims of a failure to explain insufficient to support a claim of ineffective assistance of counsel. For instance, in *United States v. Gomez*, the defendant likewise stated, "I didn't know much of what was going on and she didn't explain to me so I can better understand them." No. 17CR2520-LAB-1, 2019 WL 1301756, at *2 (S.D. Cal. Mar. 21, 2019). The court noted that "[m]ost criminal defendants do not understand court proceedings very well, and they often appear 'intricate, complex, and mysterious' to non-lawyers, which is why counsel are appointed for them." *Id.* (internal citations omitted). Nonetheless, "attorneys do not need to explain every aspect of a case, or even most aspects, to their clients; they only need to explain as much as a client needs to know." *Id.* The court pointed out that that the petitioner's claim had "not

-13-

pointed to any error by her attorney, much less an unprofessional one." *Id.* Accordingly, because "[c]onclusory claims such as this do not warrant relief," the court denied the petitioner's motion. *Id.* (citing *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993)). Similarly, here, Petitioner fails to point "to any error by her attorney, much less an unprofessional one," *Gomez*, 2019 WL 1301756 at *2, and as such, this Court, like the *Gomez* court, finds that Petitioner's vague claim that her attorney failed to explain things to her fails to support a claim of ineffective assistance of counsel.

Second, Petitioner claims she was told to sign the plea agreement so she would not get more than 10 years. CV ECF No. 1 at 6. However, Petitioner does not claim that her signing of the plea agreement was not voluntary. *Id.* She also does not claim she was coerced into signing the agreement. Additionally, the magistrate judge, who had an opportunity to observe Petitioner's demeanor, found that her guilty plea was made knowingly and voluntarily. ECF No. 17 at 4:5-13. Thus, any claim that her guilty plea was not voluntary is belied by the record in this case.

Third, Petitioner claims that her attorney did not request a mental evaluation for her, and she suffers from anxiety and severe depression, which she is being treated for in prison. ECF No. 1 at 5. However, Petitioner fails to argue how her attorney's failure to secure a mental evaluation would have changed (1) her decision to plead guilty and/or (2) the outcome of a trial, if she had chosen to pursue one. Because she fails to show that she would have gone to trial and would not have pled guilty had it not been for her counsel's conduct, her claim of ineffective assistance of counsel fails. Not only was defense counsel effective, but defense counsel also secured a favorable plea deal for Petitioner. This deal enabled Petitioner to secure a sentence almost half the length of the mandatory minimum sentence. Further, other courts have also held claims of a failure to secure a mental evaluation as failing to substantiate a claim of ineffective assistance of counsel.

For instance, in *United States v. Gordon*, 793 F. App'x 471, 473–74 (9th Cir. 2019), *cert. denied sub nom. Gordon v. United States*, No. 20-5530, 2020 WL 6037318 (U.S. Oct. 13, 2020), the court noted that a district court abuses its discretion by denying

necessary expert services where "reasonably competent counsel would have required the assistance of the requested expert for a paying client," and the defendant "was prejudiced by lack of expert assistance." *Id.* at 473. However, the petitioner in *Gordon* failed to show prejudice from a failure to conduct a mental examination because "[h]e received a pre-trial mental-health evaluation, which the district court reviewed, . . . [which] summarized Gordon's medical history, including mental health, as well as his history of substance abuse." *Gordon*, 793 F. App'x at 473-74. Thus, "[a]t sentencing, the district court discussed Gordon's difficult upbringing and recommended that the Bureau of Prisons conduct a mental-health evaluation." *Id.* at 474. However, the petitioner did "not show how a second mental-health evaluation would have caused the district court to consider mitigating factors that it had not already weighed." *Id.* Similarly, here, the Court reviewed a detailed Presentencing Investigation Report, ECF No. 18, which like the report in *Gordon*, detailed Petitioner's medical history, including her mental health and history of substance abuse. Thus, Petitioner, like the *Gordon* petitioner, cannot show a mental health examination would have caused this Court to consider mitigating factors that it had not already weighed.

As another example, in *Gomez*, the petitioner, like Petitioner here, pled guilty pursuant to a plea agreement to one count of importation of methamphetamine in violation of 21 U.S.C. §§ 952 and 960, and subsequently filed a petition to vacate her sentence pursuant to 28 U.S.C. § 2255. 2019 WL 1301756 at *1. The *Gomez* petitioner also argued, *inter alia*, that "she was denied a mental evaluation before signing her plea agreement." *Id.* at *1. Like Petitioner here, "[t]he only basis for such an evaluation that she has identified is severe depression." *Id.* at *1. The court denied the petitioner's motion because "[e]ven assuming she was suffering from severe clinical depression at the time she decided to plead guilty, she does not identify any facts that would have made her decision anything other than knowing and voluntary." *Id.* Although the *Gomez* petitioner had never been treated for her depression, while Petitioner here had been treated for six months for her mental health issues, ECF No. 18 at 7, Petitioner still fails to identify any facts indicating

-15-

3:18-cv-02511-BEN; 3:17-cr-03179-BEN-1

that (1) she suffered from depression at the time she pled guilty and/or (2) such depression or anxiety caused her guilty plea to be anything other than knowing and voluntary.

More importantly, "depression alone is very unlikely to render a plea involuntary." *Tanner v. McDaniel*, 493 F.3d 1135, 1146 (9th Cir. 2007); *see also United States v. Torres*, 697 F. App'x 541 (9th Cir. 2017) (holding that the petitioner's "claim that he suffered from untreated depression when he pleaded guilty does not render his plea involuntary"). In *Tanner v. McDaniel*, the defendant argued "that a rational defendant in his position would have wished to appeal the voluntariness of his plea based on the lack of a competent psychological evaluation, Tanner's depression at the time of the plea and during the crimes, and Tanner's substance abuse during the crimes." *Id.* at 1145-46. The court noted that first, if defendant was challenging the validity of his guilty plea in the district court, he should have done so "by bringing a motion to withdraw the guilty plea, or by initiating a post-conviction proceeding." *Id.* at 1145. The court further pointed out that even if the defendant could have challenged the voluntariness of his plea on appeal, "his allegations do not suggest that a rational defendant in his position would have wished to do so," noting that his "main allegation is that he was suffering from depression when he pleaded guilty." *Id.* The court reasoned that he "would have to show that his depression rendered him unable to make the decision to plead guilty freely and intelligently." *Id.* at 1145-46. However, "[t]he record of the plea hearing indicates the opposite: that Tanner lucidly and voluntarily plead guilty." *Id.* at 1146.

Similar to the magistrate judge in *Tanner*, which observed that the defendant, despite his depression, lucidly and voluntarily pled guilty, Magistrate Judge Stormes, who had an opportunity to observe Petitioner's demeanor, found that she was competent to enter a plea, and that her guilty plea was made knowingly and voluntarily. ECF No. 17 at 4:5-13.

Finally, in *United States v. Flores-Acuna*, a federal prisoner appealed the denial of his Section 2255 motion as well as the court's decision not to hold an evidentiary hearing, asserting "that he was prejudiced by counsel's failure to present evidence of his mental deficit to the jury." 637 F. App'x 325 (9th Cir. 2016). In *Flores*, after trial, a clinical and

-16-

forensic psychologist evaluated the defendant and concluded that his low test results suggested that his intellectual functioning fell "within the mentally retarded range." *Id.* at 325. In ruling on the petitioner's motion, the district court held that "[n]othing in Dr. Yanofsky's evaluation renders trial counsel's professional judgment not to further investigate Defendant's mental capacity outside the wide range of reasonable professional assistance guaranteed by the Sixth Amendment." *United States v. Flores-Acuna*, No. 10-CR-2920-WQH, 2014 WL 4355583, at *5 (S.D. Cal. Sept. 2, 2014) (Hayes, J.), *aff'd*, 637 F. App'x 325 (9th Cir. 2016). The district court noted that even if it were "to assume that trial counsel's decision not to further investigate Defendant's mental capacity fell below an objective standard of reasonableness, there is not a reasonable probability that the result in this case would have been different." *Id.* as *7. As a result, the Court found "that Defendant's trial counsel acted within the 'wide range of reasonable representation' required under the Sixth Amendment." *Id.* (citing *United States v. Ferreira–Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986)). On appeal, the Ninth Circuit likewise concluded that it was "not reasonably probable that, had the jury been presented with evidence from the psychological report, the outcome of the trial would have been different." *Flores*, 637 F. App'x at 326. "Accordingly, even assuming trial counsel's performance was deficient, Flores–Acuna cannot establish the requisite prejudice under Strickland." *Id.* The court also affirmed the district court's decision to deny the petitioner an evidentiary hearing. *Id.*

In *Flores-Acuna*, even though subsequent mental examinations showing the defendant fell within the range for mental retardation, the Ninth Circuit still upheld the district court's decision that the defense counsel's failure to present evidence of mental health issues did not qualify as ineffective assistance of counsel. Here, not only has Petitioner failed to advance any claims that she was mentally incompetent to enter her plea, but "depression alone is [also] very unlikely to render a plea involuntary." *Tanner*, 493 F.3d at 1146. Thus, the Court finds that Petitioner's claims that her counsel failed to conduct a mental examination of her do not substantiate an ineffective assistance of counsel claim. Such claims are also belied by the record, which confirm that she voluntarily and

-17-

knowingly entered a guilty plea, was deemed competent by both the magistrate and district judge, and even thanked her counsel for his representation at the sentencing hearing.

### E. Petitioner Is Not Entitled to an Evidentiary Hearing

Petitioner has failed to provide the Court with credible evidence to substantiate her claims of ineffective assistance of counsel. Instead, she has provided the Court with nothing more than conclusory allegations, which fail to warrant an evidentiary hearing. *Cf. Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (providing that "[s]olemn declarations in open court carry a strong presumption of verity" such that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible"). Because the Court finds sufficient information in the record to allow the Court to rule on Petitioner's Motion, the Court denies Petitioner's Motion without an evidentiary hearing. *See United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1988) (noting that courts are not required to hold an evidentiary hearing when ruling on a Section 2255 motion where the claims could "be conclusively decided on the basis of documentary testimony and evidence in the record"); *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir.1989) (per curiam) (reiterating that district courts are not required to hold an evidentiary hearing if the allegations fail to state a claim for relief).

## V. CONCLUSION

For the above reasons, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

Because the Court finds there is sufficient information on the record to demonstrate Petitioner was not entitled to a mental evaluation, Petitioner's Motion is **DENIED** without an evidentiary hearing.

Finally, the Court **DENIES** Petitioner a certificate of appealability. A defendant is required to obtain a certificate of appealability in order to appeal a decision denying a motion under 28 U.S.C. § 2255. A court may issue a certificate of appealability where the movant has made a "substantial showing of the denial of a constitutional right," and

-18-

reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). This Court finds that Movant has not made the necessary showing. A certificate of appealability is therefore **DENIED**.

**IT IS SO ORDERED.**

DATED: October 26, 2020

HON. ROGER T. BENITEZ
United States District Judge